IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

SEBRENA C. HAMILTON,                )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )   CIVIL ACTION NO. 11-G-1785-E
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
    Defendant.                      )
                                    )
                                    )

**MEMORANDUM OPINION**

The plaintiff, Sebrena C. Hamilton, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)(4).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

> (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

        In the instant case, ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," her impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 50].  The ALJ found that the plaintiff retains the residual functional capacity to perform light work[1] and as such, can perform her past

---

[1] The ALJ's residual functional capacity finding detailed the following restrictions:

> . . . lifting/carrying 20 pounds occasionally and 10 pounds frequently; standing/walking 6 hours and sitting 6 of 8 hours in an 8-hour workday; occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, and never climb ladders/ropes/scaffolds; . . . and never work around hazardous machinery or unprotected heights.

[R. 51].

relevant work as a deli clerk. [R. 53]. Accordingly, the ALJ found the plaintiff was not disabled within the meaning of the Act.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995 708-09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep,

> stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.  There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests.  Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling. Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its illusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpitation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

**THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY**

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability

7

claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 37 years old at the time of the ALJ's decision. The ALJ found the plaintiff has the following severe impairments: fibromyalgia; degenerative disk disease (DDD) and mild obesity. [R. 49]. He found that the plaintiff could perform light work with the certain restrictions detailed above, and that she could perform her past work as a deli clerk. [R. 51, 53].

The record contains voluminous treatment notes from Alan C. Walch, Jr., the plaintiff's chiropractor. [R. 163-209; 260-284]. Most of these treatment notes show a

reported pain level of three to four out of $10^2$, and on July 7, 2008, she reported a pain level of five to her chiropractor. [R. 191]. But that same day, the plaintiff told the MRI technologist her pain was 10 out of 10. [R. 148]. The MRI showed a small subligamental herniation centrally and left L4. "This is only seen on the axial series. If further work up is indicated, lumbar myelography could be performed for complete evaluation." [R. 146]. There was no evidence of other intraspinal pathology.

On September 16, 2008, she was seen by Brad Goodman, M.D., when she complained of five out of ten pain. [R. 156]. The physical exam showed:

> 5/5 muscle strength in bilateral lower extremities. Reflexes 2+/4 in bilateral lower extremities. Positive right L4, L5, S1 paraspinal tenderness. Negative straight leg raise from 0 to 70 degrees in bilateral lower extremities.

Id. He performed an epidural steroid injection on the right L4-L5 on October 6, 2008. [R. 154]. On October 20, 2008, Dr. Goodman noted intermittent and dull low back pain at three out of 10 (the injection had given her 70 to 75 percent pain relief). [R. 152]. On January 29, 2009, Dr. Goodman gave her another epidural block. [R. 291].

Meanwhile, on March 25, 2009, she was seen by Charles H. Clark, III, M.D., a neurologist. Straight leg raising was positive for hip pain on the right at 30 degrees and negative on the left. [R. 245]. Dr. Clark assessed a possible lumbar disk herniation and ordered a lumbar myelogram and post myelogram CT scan. The myelogram showed:

---

[2] In May and June 2008, and January 2009, she reported a pain level of 7-8. [R. 164-67, 193-94, 281-84).

> The lumbar spine demonstrates appropriate alignment. The disc bulge at L4-5 results in mild relative effacement of the left lateral recess. There is mild effacement of the right lateral recess at L5-S1. Mild truncation of the right S12 nerve root sheath. The remaining lumbar disc spaces are unremarkable.

[R. 249]. The CT scan showed:

> a broad-based left lateral disk protrusion at L4-5, which effaces the left lateral recess and displaces the origin of the left L5 nerve root. There is associated truncation of the contrast within the proximal left L5 nerve root sheath. There is mild left foraminal narrowing.
>
> There is a linear increased signal along the posterior margin of the disk at L5-S1, which may represent calcification related to annular tears. Furthermore, the disk bulge effaces asymmetrically toward the right encroaching on the right lateral recess. This finding appears to contact the proximal right S1 nerve root sheath with slight displacement. However, this sheath does opacify with contrast. There is mild neural foraminal narrowing bilaterally.
>
> The remaining lumbar disk spaces are fairly well maintained without significant stenosis. There is no significant spondylolisthesis.

[R. 247]. On April 7, 2009, Dr. Clark described the myelogram and CT scan as "unremarkable." [R. 242]. He prescribed a Medrol Dosepak, physical therapy and exercises, as she did not have a surgical lesion in his opinion. [R. 242].

On July 13, 2009, the plaintiff saw Vishala L. Chindalore, M.D., a rheumatologist. A musculoskeletal exam revealed:

> Some osteoarthritic changes of the hands and knees. All the fibromyalgia trigger points are positive. Low back has spasm. LS spine flexion is painful. Both the hands, wrists, elbows, shoulders, ankles, knees and hips have good range of motion without any effusions. Gait is normal. No myopathy or radiculopathy. No vasculitic lesions.

[R. 253]. Dr. Chindalore assessed a "clinical picture of fibromyalgia and some osteoarthritis." Id. He restarted her Lyrica, while the plaintiff was to continue on Lorcet from her other doctors. Id. At an August 13, 2009, follow up, Dr. Chindalore noted that some fibromyalgia trigger points were positive, but lumbar spine flexion was within normal limits and the "[l]ow back appears benign." [R. 252]. "She is doing well on the current therapy." Id. On October 13, 2009, Dr. Chindalore noted her status was unchanged, with a pain level of seven "all over." [R. 295, 297].

Nine months after her last treatment from Dr. Goodman, on November 2, 2009, she returned complaining of seven of 10 pain with a positive bilateral straight leg raising test. [R. 289]. An MRI of the lumbar spine showed early disc desiccation at L4-5, a posterolateral left-sided disc protrusion which contacts the proximal left L5 nerve root, and a mild mass effect upon the leftward thecal sac. [R. 288]. On November 5, 2009, she complained of nine out of 10 pain, and hydrocodone and Lyrica only improved pain slightly. [R. 287]. More injections were scheduled. Id.

After summarizing the medical evidence, the ALJ found that the plaintiff's "allegations of disabling symptoms and limitations since the alleged onset date are not supported by the objective evidence." [R. 52]. He discounted chiropractor Walch's January 7, 2009, Physical Capacity Evaluation:

> Specifically, his opinion that the claimant frequently has pain reaching 8/10 resulting in the inability to function normally is inconsistent with his own office notes that consistently show pain levels rarely above 4 to 5.

Id.  As a chiropractor, Walch is not an acceptable medical source for proving the claimant has a severe impairment.  Once medical evidence establishes the presence of a severe impairment, however, their testimony may be utilized to show how a claimant's impairment affects his ability to work..  20 CFR § 404.1513(e).

The plaintiff testified that she has received numerous epidural blocks to address her pain, which she described as a stabbing and burning across her lower back and radiating down both legs. [R. 25-26].  The pain keeps her up at night and she sleeps for "maybe two-and-a-half, three hours tops at one time." [R. 28].  During the day, she reclines on a couch in order to ease her pain.  Id.  She lives with her parents, who cook and clean for her. [R. 29].  The plaintiff testified that she cannot lift a gallon of milk, and that she could probably walk half a block before back and feet pain would prevent her from continuing. [R. 31].  She estimated her current pain as a seven on a 10-point scale. [R. 34].

While the ALJ conceded that the plaintiff has suffered from disabling levels of pain, he determined that he was unable to project that her pain could be expected to last for 12 continuous months:

> With more severe findings and allegations of pain and discomfort occurring only late in 2009, it is unclear as to as to whether the claimant's condition will improve, stabilize, or deteriorate.  If the claimant were to be found disabled, the onset would have to be late 2009 and there would have to be some assumption that the present levels would continue unabated.  More significant symptoms of pain beginning in 2009 are also consistent with the claimant's testimony at the hearing that her current pain level is 7/10 and that it has been at this level for the past 5 months.  With her December 8, 2009 hearing date and assuming the validity of the claimant's statements

12

> regarding onset of this degree of pain and discomfort, her pain would have been at this level only since about August 2009 and the undersigned would be unable to project that her current levels of severity would last for 12 continuous months.

[R. 52-53].

It is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.  At the hearing, the VE testified that if the plaintiff experiences pain and discomfort to such an extent that it would affect her concentration, persistence and pace for up to two consecutive hours, all work activity would be precluded. [R. 38].  Additionally, the VE testified that absenteeism of two or more days of work per month would also preclude all work activity. [R. 39].

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action

13

with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 11 April 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.